RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/17/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| TOMMY BORDELON<br>Petitioner | CIVIL ACTION<br>SECTION "P"<br>NO. 09-00142 |
| VERSUS | |
| WARDEN AVOYELLES CORR. CTR.<br>Respondent | JUDGE JAMES T. TRIMBLE, JR.<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by pro se petitioner, Tommy Bordelon ("Bordelon"), on January 22, 2009 and amended on May 19, 2009 (Doc. Item 1 and 6). Bordelon is attacking his conviction and sentence imposed by the 12th Judicial District Court in Avoyelles Parish, Louisiana, on one count of car jacking. Bordelon was initially sentenced to 25 years of imprisonment at hard labor. However, the sentence was later vacated after the Louisiana Fifth Circuit Court of Appeal issued an opinion stating a prior crime which was relied upon to sentence Bordelon as a career offender was a misdemeanor rather than a felony. Bordelon was resentenced to 12 years at hard labor and is currently confined in the Louisiana State Penitentiary in Angola, Louisiana.

Bordelon raises the following grounds for review in his habeas petition:

1. The trial court erred by allowing Bordelon to represent himself without a formal waiver of counsel;

2. The trial judge erred in failing to recuse himself prior to trial; and

3. The appellate record was incomplete in that Bordelon's motion to recuse, motion for change of venue and the transcript of hearings regarding both motions were not included.

Bordelon alleges he exhausted his state court remedies but the state contends otherwise. In its response dated October 15, 2009 (Doc. 16), the State notes the appeal pending before the Louisiana Third Circuit Court of Appeal ("Third Circuit") in which he attacks his 12 year sentence. This appeal is no longer pending. On May 5, 2010, the Third Circuit issued an opinion affirming his sentence of 12 years as a second felony offender and ordering the trial court to amend the sentence to show it shall be served without benefit of parole. State v. Bordelon, 37 So.3d 480 (La. 3rd Cir. 2010). Thereafter, on February 4, 2011, the Louisiana State Supreme Court denied writs. State v. Bordelon, 56 So.3d 990 (La. 2011).

Since then, no additional writs of habeas corpus nor any amendments to this petition have been filed in this court. Accordingly, all state court remedies are exhausted.

## Facts

The Third Circuit set forth the procedural history and facts of the Bordelon case[1] as follows:

---

[1] Docket no. 03-cr-117139A consolidated with 03-cr-118447.

The Defendant, Tommy Bordelon, was charged by bill of information with car jacking, a violation of La.R.S. 14:64.2. On June 3, 2003, he was convicted by a jury as charged. On July 31, 2003, Defendant was found to be a habitual offender and was sentenced on August 29, 2003, to twenty-five years at hard labor.

Defendant originally appealed his conviction under docket number 03-1711 which was consolidated with 04-231. However, because there were errors in the record and the record before this court was not complete, this court ordered the record to be corrected, re-certified and re-lodged. State v. Bordelon, an unpublished order bearing docket number 03-1713 and 04231 (La.App. 3 Cir. 2/26/04). The trial court complied with this court's order, and on April 24, 2004, a new record was lodged under docket numbers 04-490 and 04-491. The court then ordered that the records be supplemented with transcripts of three hearings which were missing from the record. A supplemental record was submitted on September 7, 2004.

On October 25, 2004, appellate counsel filed a supplemental brief with this court alleging insufficient evidence to sustain the verdict and deficiency of the record for proper review. In a *pro-se* brief filed October 14, 2004, Defendant assigned several errors of the trial court including that the trial court erred when it (1) denied his motion to continue trial; (2) allowed him to act as co-counsel; (3) denied his motion for a new trial and for post-verdict judgment of acquittal; (4) refused to recuse itself; and (5) permitted certain hearing transcripts and the trial transcript to be altered. Defendant also alleged prosecutorial misconduct and ineffective assistance of trial and appellate counsel. It is to be noted that both defense counsel and the defendant *pro-se* have filed briefs with separate assignments of errors, all of which will be addressed by this court.

Statement of the Case

In the early morning hours of December 27, 2002, the victim, Clyde Mayeux, gave the defendant a ride home from a bar in Avoyelles Parish. As they were driving, Defendant told the victim that he passed the house where he was to be dropped off. When the victim stopped his truck to turn around, Defendant reached over and turned off the ignition. The Defendant then hit the victim on

3

the head with an object, dragged him out of the truck and drove away in the victim's truck. A month later, Defendant was apprehended in New Orleans driving the victim's truck.

(R. V, Tab 146, 1747-1748).

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 323-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d. 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution or the laws or treatises of the United States. 28 U.S.C. §2254(a).

Under AEDPA, which is applicable to habeas petitions filed after its effective date of April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceeding unless the adjudication of the claim (1) resulted in a decision that was "contrary to", or involved an "unreasonable application of",

4

clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulting in a decision that was based on an "unreasonable determination" of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194, 151 L.Ed.2d 136 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. Id.

## Law and Analysis

### Ground 1 - Waiver of Counsel

Bordelon contends he was not properly advised by the trial judge about the dangers and disadvantages of self-representation pursuant to *Feretta v. California*, 422 U.S. 806 (1975). A defendant who chooses to exercise the right of self representation must clearly and unequivocally make the request to proceed *pro se* and then knowingly and intelligently waive that right. Id.

Prior to *voir dire*, Bordelon made an oral motion for a continuance based upon ineffective assistance of counsel. Specifically, he contended that his attorney, the fourth attorney appointed to his case, had only been to the jail once to visit him, filed only one motion and failed to subpoena witnesses Bordelon felt should be called.[2] In response, the judge noted that there was no reason for his attorney to duplicate the numerous motions Bordelon filed pro se and that his attorney had successfully argued a pretrial motion the prior day. However, he acknowledged that a question existed as to whether or not Bordelon wanted to represent himself.

> COURT:    ...Now what about the issue about you representing yourself?
>
> BORDELON  I can't do it, I need an attorney.

---

[2] Counsel did not subpoena the emergency room doctor and nurse as their purported testimony regarding the extent of Mayeux's injuries and the treatment thereof, had no bearing on the charge of car jacking.

...

COURT      Let's clear up this issue about you representing yourself. I've appointed an attorney for you. I think this is the 4th attorney I've appointed for you.

...

GASPARD    Judge, just for the record, Mr. Bordelon has conveyed to me, I don't [know] if he still feels that way but he wishes to represent himself so I...

BORDELON   ... I did not say that in [any] way, any how, any shape or form. I said I was a certified auto glass mechanic. I'm not an attorney.

COURT      All right. Mr. Bordelon, clearly in that opening statement, closing statements, and questions you confer with counsel, you can discuss with him and he'll be the one to do the talking. Is that how you want to proceed?

BORDELON   I don't know, I haven't seen that man to talk to him about my case, about how the case is going to be operated. All of two minutes I spoke to him.

COURT      O.K. It's time to proceed then. Your attorney will give opening and closing and question witnesses. Discuss with him what questions you want to pose. Is that how you want to proceed Mr. Bordelon?

GASPARD    Judge, just in case, we will reserve his right because he changes his mind very frequently.

COURT      I have to give him that right. I think he can prejudice himself by doing that. You can prejudice yourself Mr. Bordelon, so I'm telling you...

BORDELON   ... What other choice do I have?

COURT      ... If you start asking questions...

...

7

| | |
|---|---|
| COURT | ... If you start asking question and you start making statements you open yourself up for cross examination, you understand? |
| BORDELON | All right. Yes, sir. |

(R. I, Tab 14, 90-94).

Thereafter, *voir dire* was conducted and a jury was empaneled. Upon recessing, and outside the presence of the jury, the following exchange took place:

| | |
|---|---|
| COURT | ... The next issue I'm not sure it's going to be similar as a motion or as a pleading that you want to do your opening statement yourself? |
| BORDELON | Yes, sir. |
| COURT | O.K. If it is construed as an argument I'm going to ask the State if his opening is construed as an argument...if his opening is construed as testimony, the State's position is you will cross examine him? |
| KELLY | Yes, sir, Your Honor. If he is testifying, now if he understands the purpose is to present a preview of what he thinks the evidence will show or what his is that's fine. But to the extent that it becomes testimony that he does open himself up to the possible waiver of his fifth amendment privilege against self-incrimination. |
| COURT | Mr. Bordelon, do you understand that? |
| BORDELON | Yeah, I understand. |
| COURT | If you start I will this and I will that. |
| BORDELON | Yes, sir. |
| COURT | Let me make sure I said that to you and you told me that you discussed that with your attorney? |
| BORDELON | Yes, sir. |

8

| | |
|---|---|
| COURT | The attorney is indicating that he discussed that he discussed that with you? |
| BORDELON | Yes, sir. |
| COURT | You understand the risk involved? |
| BORDELON | I understand. |
| COURT | O.K. You still wish to make your opening statement yourself? |
| BORDELON | I do. |
| COURT | Your attorney is doing an excellent job. |
| BORDELON | And also act as self-counsel in cross examination too for the record. |
| COURT | O.K. I'll allow it. I just want to tell you again you have an attorney who's just done an excellent job for you thus far. His demeanor in front of the jurors was excellent. He was in accord with them. |
| BORDELON | That's right. |
| COURT | O.K. |
| GASPARD | Judge, for the record, we have discussed the pros and cons of him participating in his defense. |
| COURT | This Court will note that Mr. Bordelon assumes the risk and he understand full well the risks that he undertakes and he assumes that risk and we'll proceed. Are you ready to bring in the jury? |

(R. I, Tab 14, 156-158).

It is evident that prior to *voir dire*, Bordelon was not asking to represent himself. The record is equally as clear that his desires after *voir dire* were no different. Bordelon did not seek to proceed *pro se*, he simply wanted to participate as co-counsel in

9

his defense. He wanted to deliver the opening statement and examine and cross examining witnesses. Though there was no right to hybrid representation, the judge allowed him to proceed this way. While Bordelon made the opening statement, examined and cross examined witnesses and provided the closing argument, his counsel also questioned witnesses and made and opposed objections throughout the course of the trial. At no time did the two conflict in terms of defense strategy as they both argued Bordelon acted in self defense. Though Bordelon's participation was wide-ranging, his involvement did not render his counsel "stand-by" and the two were aligned in Bordelon's defense. At no point after trial commenced did Bordelon indicate counsel's performance was unwelcome. See Randolph v. Cain, 412 F.App'x. 654 (5th Cir. 2010). Having not clearly and unequivocally invoked his right to self representation, Bordelon was not entitled to a Feretta warning.

Even if counsel had invoked his right to self representation and was to be advised of the dangers and disadvantages thereof, it is of no consequence.[3] Bordelon's acquiescence in allowing counsel

---

[3] Had a Feretta warning been necessary, the warning issued by the trial judge in this case fell short of that needed to advise Bordelon of the dangers and disadvantages of self representation. It is worth noting that in United States v. Jones, 421 F.3d 359, 363 (5th Cir. 2005), the Fifth Circuit provided relevant portions of The Benchbook for U.S. District Court Judges as a "guide for questions the judges can ask to convey the disadvantages the defendant will likely suffer if he proceeds pro se....". This opinion and excerpt was later referenced by the court in an unpublished opinion, Gross v. Cooper, 312 F.App'x. 671, 2009 WL 528240 (5th Cir. 2009). "The

10

to continue to participate in the trial resulted in a waiver of his right to self representation thereby negating the need for a Feretta warning.

> Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be within the defendant's acquiescence. At least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.

McKaskle v. Wiggins, 465 U.S. 168, 183 (1984). See also Lefevre v. Cain, 586 F.3d 349, 355-56 (5th Cir. 2009), cert. denied, 130 S.Ct. 1941 (2010); United States v. Long, 597 F.3d 720, 728 (2010), cert. denied, 130 S.Ct. 3524 (2010).

Ground 2 - Failure to Recuse

Bordelon contends that the trial judge, Judge Jeansonne, should have recused himself as requested in written motions dated April 28, 2003 and May 21, 2003. However, as the State contends, that issue is procedurally barred as it was not properly preserved for appellate review and, thus, deemed abandoned by the Third Circuit. Bordelon "...failed to preserve the issue for review..." and that he failed "...to adequately brief the assignment...." (R. V, Tab 146, 1771).

On May 19, 2009, the undersigned ordered Bordelon to amend his petition to address the procedural default of his recusation claim

---

relevant sections of The Benchbook can also be used as an instructive guide for state court judges in respect to their identical constitutional obligations under Faretta." Id. at 675, n. 1.

(Doc. 5). However, his amendment did not provide evidence or argument against procedural default and no further amendments were made. Accordingly, as this court is precluded from considering a claim rejected by the state courts on the basis of procedural default, this claim is without merit. <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991), citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81 (1977); <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 148 (1979); <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989).

<u>Ground 3 - Incomplete Appellate Record</u>

Bordelon's final contention is that the appellate record is incomplete as it does not contain his motion for change of venue, motion for recusal or transcripts of either hearing. In support, he cites <u>U.S. v. Atilus</u>, 425 F.2d 816 (5th Cir. 1970) and <u>Hardy v. U.S.</u>, 375 U.S. 277 (1964).

In <u>Atilus</u>, the court determined that where a transcript of the trial proceedings were no longer available, there was no choice but to reverse the conviction. <u>Id.</u> <u>Atilus</u>, has no bearing on the instant case as the trial transcript exists and was relied upon by both the Third Circuit and Louisiana Supreme Court.

Bordelon also cites <u>Hardy</u>, presumably because it involves the instance where trial attorney was no longer retained at the time the appeal was taken so a full transcript of the trial proceedings was owed to the defendant. However, this is not an issue here. Bordelon was provided a transcript. He simply takes issue with

what is in the record or rather, what is not.

The Third Circuit, upon realizing that the record contained errors, ordered that it be corrected, re-certified and re-lodged. The trial court complied with the request and, after it was re-lodged, the Third Circuit determined transcripts of the April 15, 2003 and May 15, 2003 hearings were not included. Accordingly, it ordered the record be supplemented with the same. Thereafter, the trial court advised that it was unable to supplement as the compact disk which contained the audio of the hearings was damaged and the information could not be recaptured or reproduced. The Third Circuit found that the absence of the transcripts was not prejudicial. The record did not contain any motions filed prior to the hearings and minutes from both the April 15, 2003 and May 15, 2003 hearings revealed that while oral motions were made for change of venue and recusal, respectively, exhibits were not entered into the record nor were any witnesses examined. (R. V, Tab 146, 1757-58).

Again, Bordelon fails to produce any argument or evidence as to how the absence of either of these transcripts preclude effective appellate review of the issues to merit relief. Draper v. Washington, 372 U.S. 487, 496-98 (1963). The Third Circuit acknowledged its order to have the record corrected, re-certified and re-lodged was due to the fact there were both that errors in the record and the fact the record before it were incomplete (R. V,

13

Tab 146, 1754). Upon re-lodging, trial court acknowledged that a compact disk containing transcripts from the May 15, 2003 was damaged and could not be repaired or recreated. The Third Circuit, aware of the lacking transcripts found the record sufficient for appellate review and no complaints were made by the Louisiana Supreme Court prior to issuing its writ denial. The undersigned must defer to the state court's implicit factual determination that the record was sufficient for appellate review. Accordingly, as Bordelon fails to demonstrate he was prejudiced by any errors, inaccuracies or omissions in the record, his claim lacks merit.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Bordelon's petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the**

date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice of District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED at Alexandria, Louisiana on this 17th day of August, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE